CITIZENS FIDELITY BANK & TRUST CO., Appellant,

v.

Frank LAMAR, Appellee.

CITIZENS FIDELITY BANK & TRUST CO., Appellant,

v.

Steven X. GIUNTA, Appellee.

Court of Appeals of Kentucky.

Sept. 2, 1977.

Rehearing Denied Oct. 28, 1977.
Discretionary Review Denied
March 7, 1978.

Albert F. Reutlinger, Louisville, for appellant.

Kenneth L. Anderson, Louisville, for appellee.

Before COOPER, HOWERTON and REYNOLDS, JJ.

COOPER, Judge.

By agreed motion of appellants and appellees, these two appeals were consolidated by Order of the Court of Appeals entered on April 14, 1977. They are appeals from judgments in the Jefferson Circuit Court wherein both cases were dismissed with prejudice by the trial court.

These actions were brought in the trial court by the Citizens Fidelity Bank & Trust Company as plaintiff against the defendants, Dr. Frank Lamar and Dr. Stephen X. Giunta, in separate actions which have been consolidated on appeal. The suits were brought on what was alleged to be written guaranty agreements whereby the defendants undertook to guarantee the repayment to the Bank of an obligation of a corporation known as Art Accents Corporation. The amount claimed in each action is the sum of $52,000.00.

The said Art Accents Corporation was heavily indebted to the Bank and needed additional monies. A plan was devised whereby the Bank indicated a willingness to lend additional funds to Art Accents Corporation.

Mr. Anthony Scioli had dealt with the Bank for and on behalf of Art Accents Corporation through a Mr. Lehmann, one of the Bank managers. Mr. Scioli went east to secure persons, evidently interested in investing in tax shelters and contacted Dr. LaMar and Dr. Giunta. Scioli had obtained printed guaranty forms from the Bank which were unsigned and left blank as to amounts, dates, the name of principal, etc.

In what appears to be a hurried proposition, Mr. Scioli obtained the signatures of Dr. LaMar and Dr. Giunta on separate blank guaranty forms. According to the testimony of the appellees, Mr. Scioli had them sign the guaranty contracts in blank with the understanding that it would be a possible future investment for them and with the added purpose of showing the Bank's officers that he had future potential investors. It was the testimony of the appellees that they in no way authorized Mr. Scioli to fill in the blanks or execute the contracts.

Mr. Scioli returned to the Bank in Louisville armed with the guaranty agreement signed in blank and presented himself to Mr. Lehmann, an officer of the Bank. Mr. Lehmann first requested that the documents be completed in the amount of $156,000.00, the anticipated amount of the loan, but Scioli prevailed upon the Bank's officer to limit each defendant's guaranty agreement to $52,000.00. A secretary of the Bank then completed the forms and the loan was made to Art Accents Corporation.

Mr. Lehmann, the agent for the Bank, accepted unsigned, erroneous and incomplete financial statements from the appellees because the company needed the money desperately. As agent for the Bank, he used less than ordinary care to say the least. No further contact was made with the appellees on this matter. Mr. Lehmann admits that Scioli did not present to him any written authority as to agency for appellees, and he was not led to believe by anyone that Scioli was their agent.

The Art Accents Corporation defaulted on its obligation to the Bank and demand was made on the appellees to pay the guaranty agreements in the amount of $52,000.00 each, which they refused to pay.

The Bank filed separate suits against the appellees pleading non-payment of the guaranty agreements in the amount of $52,000.00 each. The trial court, in two separate actions, found against the Bank and in favor of the defendants, Dr. LaMar and Dr. Guinta.

The main issues to be decided by this Court are:

(1) DID THE GUARANTY AGREEMENTS CONSTITUTE A BINDING AND ENFORCEABLE CONTRACT?

(2) DID SCIOLI HAVE THE AUTHORITY TO ACT AS AGENT FOR THE APPELLEES UNDER THE STATUTE OF FRAUDS?

The thrust of the appellant's argument is premised on the assumption that since the appellees signed the guaranty agreements in blank, they are therefore legally responsible for whatever sums or obligations that were later filled in by Scioli and the Bank, as if they were negotiable instruments. It is the contention of the appellees that there was no contract between the parties as the necessary elements of a contract are absent in these matters. The essential, vital terms of these contracts are missing; the documents are not dated; the principal is unknown and the amount to be guaranteed is left bank.

As recited by American Jurisprudence:

. . . [A] signature to an incomplete paper or contract, wanting in any substantial particular, does not bind the signer without further assent on his part to the completion of the instrument, where no delegation of authority is conferred to supply the defect. So, where a form contract is signed with unfilled blanks, and one party fills in the blanks contrary to the authorization of the other party, the latter is not bound thereby. 17 Am. Jur.2d *Contracts* § 73 at 411–12 (1964).

■ According to the legal definition, the contract of a guarantor is his own separate contract and the fundamental difference between a contract of guaranty and one of suretyship is that the guarantor's contract is collateral to and independent of the contract, the performance of which he guarantees, while that of a surety is an original obligation.

■ Here, ostensibly, we have a contract between the appellees and the Bank. However, if we apply fundamental contract law in this case, the Court is of the opinion there was never a contract between the parties. There was never any mutuality of assent. Scioli was not given any authority to act for appellees, and the Bank, through testimony by its officer, did not treat Scioli as an agent for appellees. Therefore, in this transaction, the minds of the Bank and the appellees never met on any of the terms or conditions of this contract. It is significant to the Court that the Bank never dealt directly with the appellees, and in truth, did not know if the signatures on the contracts were in fact the appellees'. The evidence negated any justification of a presumption or assumption on the Bank's part that Scioli was an agent, ostensible or otherwise, of the appellees, or had the authority to act for them.

It is the opinion of this Court that the guaranty agreements in these cases must be based on the laws of contracts. We have determined that the essential, vital elements of a contract are missing in these cases.

KRS 371.010(4) requires a promise to answer for the debt of another to be in writing to be enforceable.

KRS 371.090 provides in part as follows:

. . . No person shall be bound as the surety of another by the acts of an agent unless the authority of the agent is in writing. . . .

There is no evidence in the record that the appellees gave any written document to Mr. Scioli authorizing him to act as their agent. The law is clear that such agency agreements must be in writing. Therefore, we conclude that no legal agency relationship existed between the appellees and Mr. Scioli.

The judgments of the trial courts are affirmed.

All concur.